UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN A. THOMERSON, ERIK GULDAGER, PHALA E. VELARDE, and ELIZABETH WHITE, | ) ) ) | Civil Action No. 2:23-cv-2225-DCN-TER |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| COVERCRAFT INDUSTRIES, LLC and JASBIR PATEL, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.      INTRODUCTION

This case arises from Plaintiffs' employment with Defendant Covercraft Industries, LLC. Plaintiffs assert causes of action for violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.,  Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., and the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, et seq.  Plaintiffs also assert state law causes of action for breach of contract, breach of contract accompanied by fraudulent act, promissory estoppel, and defamation.  Presently before the court is Defendants' Motion to Dismiss the Case and Compel Arbitration or, in the Alternative, to Transfer (ECF No. 15).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.      RELEVANT FACTS

Plaintiffs John A. Thomerson, Erik Guldager, Phala E. Velarde, and Elizabeth White are,

respectively, citizens and residents of South Carolina, Florida, California, and Texas.  Compl. ¶ 1 (ECF No. 1).  At all times relevant to this action, they were employed by Defendant Covercraft Industries, LLC as sales management employees.  Compl. ¶ 1.  Covercraft is a California LLC with its headquarters and principal place of business in Oklahoma and it operates a manufacturing facility in South Carolina.  Compl. ¶¶ 2, 4.  Defendant Jasbir Patel, the CEO of Covercraft, is a citizen and resident of Illinois.  Compl. ¶ 3.

In March of 2023, Plaintiffs were notified that their positions had been eliminated and their employment with Covercraft was terminated.  Compl. ¶ 11.  At the time of their termination, Thomerson was 66 years old, Guldager was 63 years old, and Velarde was 64 years old.  Compl. ¶ 12.  Velarde and White are female.  Compl. ¶ 13.  Plaintiffs allege that Defendant Patel, who was approximately 50 years old at the time of their termination, made a disparaging comment about Guldager's age and was dismissive of female employees.  Compl. ¶¶ 14, 18.

Defendants assert that in 2016, Covercraft began requiring all of its employees to agree to the terms of its Arbitration Agreement and Dispute Resolution Policy ("the Arbitration Agreement"). Defendants have produced signed Arbitration Agreements for Plaintiffs Guldager, Thomerson, and White.  Arbitration Agreements (ECF Nos. 15-2, 15-3, 15-4).  Defendants assert that, while they cannot locate a signed Arbitration Agreement for Plaintiff Velarde, Covercraft required every employee to sign the agreement and would have terminated any employee who refused to sign it. Klause Aff. ¶ 4-6 (ECF No. 15-5).  Denise Klause was Covercraft's Director of Human Resources at the time the Arbitration Agreement was implemented.  Klause Aff. ¶ 1.  She avers that she has no recollection of any employee refusing to sign the Arbitration Agreement and, in turn, does not remember needing to terminate any employee's employment based on their refusal to comply with Covercraft's directive. Klause Aff. ¶¶ 7-8.  Klause specifically recalls that Plaintiff Velarde was

employed at Covercraft in its California operations at the time the Arbitration Agreement was rolled out, and Klause made a specific effort to ensure that all California employees signed and returned the arbitration agreement. Klause Aff. ¶¶ 9-10. Velarde avers that she never signed any arbitration agreement with Covercraft Industries Inc. or Jasbir Patel.  Velarde Aff. ¶¶ 1-2 (ECF No. 17-4).

In addition, Thomerson avers that he did not sign the Arbitration Agreement attached to Defendants' motion, nor has he ever signed any arbitration agreement with either of the Defendants. Thomerson Aff. ¶¶ 1-3 (ECF No. 17-2).  He avers that he was out of town and not at his home office when Elaine Upton with Covercraft Human Resources contacted him to tell him it was "code red imperative" that their employment documents be returned immediately.  Thomerson Aff. ¶ 4.  As a result, Thomerson's wife signed the Arbitration Agreement so that it could be returned as demanded.  Thomerson Aff. ¶ 5.  He avers that he never read, reviewed, or studied the Arbitration Agreement because he was out of town and Upton demanded that it be returned before he had an opportunity to do so.  Thomerson Aff. ¶ 7.  He attached to his affidavit some other employment documents with his signature to show that should have been easy for Covercraft to determine that the signature on the Arbitration Agreement was not his.  Thomerson Aff. ¶ 6.

Guldager avers that he was rushed into to signing a number of documents, including the Arbitration Agreement, during a company meeting and he was not given the opportunity to read it prior to signing it.  Guldager Aff. ¶¶ 3-5 (ECF No. 17-3).  White avers that she signed the Arbitration Agreement while living in California but was not given a copy of the agreement when she requested it and, thus, Defendants should not be able to rely on it. White Aff. ¶¶ 1, 3, 5 (ECF No. 17-5).  All Plaintiffs aver that they never entered into any agreements to arbitrate with Defendant Patel.  Velarde Aff. ¶ 2; Thomerson Aff. ¶ 3; Guldager Aff. ¶ 2; White Aff. ¶ 6.

The Arbitration Agreement states that the "Employee acknowledges that the Company has

a mandatory Dispute Resolution Policy (DRP) which requires binding arbitration to resolve all disputes between the Employee and the Company including any such disputes which may arise out of or relate to employment (see also paragraph 5 below)." Arbitration Agreement ¶ 2. It provides the DRP covers "any claim or dispute between the Employee and the Company, including any claim or dispute in any way related to or arising out of his/her employment with the Company" and lists specific claims including, among others, claims of discrimination, harassment, or retaliation under the ADEA and Title VII, claims under the WARN Act, and claims or disputes with the "Company's owners, directors, managers, [and] other employees." Arbitration Agreement ¶ 5. The Arbitration Agreement further provides that the "Employee understands and acknowledges that by accepting and/or continuing employment with the Company, and thereby agreeing to the terms of the DRP, that both Employee and the Company give up the right to trial by jury in a court of law for all employment-related disputes." Arbitration Agreement ¶ 4. The Arbitration Agreement requires that arbitration occur in Oklahoma City, Oklahoma. Arbitration Agreement ¶ 16.

## III.    STANDARD OF REVIEW

The Fourth Circuit has found that a motion to dismiss and compel arbitration is most properly considered under Rule 12(b)(3) for improper venue, noting that the Supreme Court has characterized an arbitration clause as "a specialized kind of forum-selection clause." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 365 n.9 (4th Cir. 2012) (citing Scherk v. Alberto–Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)); Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir.2006) ("A motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue."); see also Brown v. Five Star Quality Care, Inc., No. 2:15-CV-4105-RMG, 2016 WL 8710474, at *2 (D.S.C. Jan. 8, 2016) (applying Rule 12(b)(3)). "The party seeking to compel arbitration bears the burden of

establishing the existence of an arbitration provision that purports to cover the dispute." <u>Scales v. SSC Winston-Salem Operating, Co., LLC</u>, No. 1:17CV539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (internal quotation marks and citation omitted). "If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." <u>Id.</u> (citing <u>Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.</u>, 807 F.3d 553, 564 (4th Cir. 2015)).  When considering a motion under Rule 12(b)(3), the Court may consider evidence outside the pleadings, but the facts are viewed in the light most favorable to the plaintiff because a plaintiff need only make a prima facie showing of proper venue to survive a motion to dismiss. <u>Id.</u> at 365-66.

## IV.    DISCUSSION

Defendants argue that Plaintiff's claim are subject to mandatory arbitration pursuant to the Arbitration Agreement to which Plaintiffs consented.  They also argue that this case should be transferred to the Western District of Oklahoma to compel the parties to arbitration.  Plaintiffs argue Defendants waived arbitration by failing to mention it when Plaintiffs first notified them of the case prior to filing their complaint and inviting them to file it, that the Arbitration Agreements lack consideration and are unconscionable, that Velarde never signed the Arbitration Agreement, that the Arbitration Agreement with Thomerson's signature was signed by his wife and not him, and no arbitration agreement exists between any of the Plaintiffs and Defendant Patel.

In deciding whether to compel arbitration, the trial court is tasked with determining two gateway issues.  <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 83-84 (2002). Courts should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." <u>Hooters of America, Inc. v. Phillips</u>, 173 F.3d 933, 938 (4th Cir. 1999).  In deciding

whether the parties have an enforceable agreement to arbitrate, courts apply state law principles governing the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

As set forth above, the Arbitration Agreement provides that the Federal Arbitration Act (FAA), 9 U.S.C. § 3, et seq. is applicable here.  The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).  While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered.  Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 478 (1989).  Section 4 of the FAA provides the right to a jury trial on the issue whether a valid agreement to arbitrate exists.  9 U.S.C. § 4.

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26.   The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983).  However, the presumption in favor of arbitration "applies only when 'a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand,' not when there remains a question as to whether an agreement even exists between the parties in the first place." Raymond James Fin. Servs. v. Cary, 709 F.3d 382, 385-386 (4th Cir. 2013).

The Supreme Court has directed that we "apply ordinary state law principles that govern the

formation of contracts," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), and the "federal substantive law of arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus state law determines questions "concerning the validity, revocability, or enforceability of contracts generally," Perry v. Thomas, 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), but the Federal Arbitration Act, 9 U.S.C. § 2 (1994), "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp., 460 U.S. at 24, 103 S.Ct. 927.

As an initial matter, "[d]efault or waiver arises when the party seeking arbitration so substantially utilized the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (internal quotations omitted). That is not the case here. Though Defendants did not mention arbitration during the parties pre-litigation communications, they moved to compel arbitration within the time allowed for filing an answer. Thus, Defendants did not waive their right to arbitrate under the Arbitration Agreement.

### A.    Whether Plaintiffs Entered Into Agreements to Arbitrate

Though not the first argument raised by Plaintiffs against compelling arbitration, whether the parties originally entered into agreements to arbitrate is a gateway issue[1] that should be addressed from the start. Plaintiffs do not dispute that Guldager and White signed the Arbitration Agreement. However, they argue that Velarde never signed the Arbitration Agreement or otherwise agreed to arbitration and that Thomerson's wife, not him, signed the Arbitration Agreement.

---

[1] Plaintiffs do not dispute that the specific claims raised fall within the substantive scope of the Arbitration Agreement, the other gateway issue.

### 1.     Velarde

Defendants do not dispute that they have been unable to locate an Arbitration Agreement signed by Velarde.  Velarde avers that she never signed any such agreement.  As stated above, in deciding whether the parties have an enforceable agreement to arbitrate, courts apply state law principles governing the formation of contracts.[2]  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); see also Hill v. Employee Res. Grp., LLC, 816 F. App'x 804, 807-08 (4th Cir. 2020) (unpublished) (applying state law to determine whether an agreement to arbitrate existed where the defendant could not provide signed arbitration agreements).  Whether parties have formed an agreement to arbitrate is for a district court, rather than an arbitrator, to decide. Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019). Defendants assert that Oklahoma law applies to determine whether an agreement to arbitrate was formed between Velarde and Defendants because the Arbitration Agreement was drafted in Oklahoma by a company headquartered in Oklahoma, where all of its labor relations were managed, Klause Aff. ¶ 2, 5, but argues that even if California law applies, which is where Verlarde lived and worked at the time Covercraft required employees to sign the Arbitration Agreement, it has provided sufficient evidence to show that Velarde entered into the agreement.  Plaintiffs argue that Oklahoma law does not apply but do not specifically argue which law applies with respect to Velarde since they

---

[2]The Supreme Court has noted that a difference exists between questions regarding a contract's formation and questions regarding a contract's validity. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n. 1, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 300, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010). Rather, challenges to the validity of a contract essentially presume the contract had been formed, but nonetheless should not be enforced for any number of reasons. See, e.g., Buckeye Check Cashing, 546 U.S. at 443 (contract challenged as invalid for violating state law); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 399, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (contract challenged as invalid because it was fraudulently induced).

maintain that Velarde never signed the Arbitration Agreement.  However, with respect to the other

Plaintiffs, they argue that the Arbitration Agreements were formed, if at all, in the states where both

the Plaintiff and Covercraft's representative signed the agreement.  Both Guldager and Teri Richards,

the HR Assistant who signed the Arbitration Agreement on behalf of Covercraft, were in California

on the date of the signatures.  Guldager 2nd Aff. ¶ 3 (ECF No. 23-3).   Further, Thomerson lived and

worked in South Carolina, his wife was in South Carolina at the time she signed the Arbitration

Agreement, and Elaine Upton, the HR Representative who signed the Arbitration Agreement on

behalf of Covercraft, worked in South Carolina as well.

      "This court must follow the choice of law rules applicable in South Carolina state courts."

Witt v. Am. Trucking Associations, Inc., 860 F. Supp. 295, 300 (D.S.C. 1994) (citing Thornton v.

Cessna Aircraft Co., 703 F.Supp. 1228, 1230 (D.S.C.1988), aff'd, 886 F.2d 85 (4th Cir.1989)).   In

contract actions, South Carolina courts apply the substantive law of the place where the contract at

issue was formed.  See, e.g., O'Briant v. Daniel Constr. Co., 279 S.C. 254, 305 S.E.2d 241, 243

(1983). This rule applies where a contract's formation, interpretation or validity is at issue.  Witt, 860

F.Supp. at 300.  "[T]he place of contracting is the place where the minds of the parties meet or the

place where the final act occurred which made a binding contract." O'Briant v. Daniel Constr. Co.,

305 S.E.2d 241, 243 (S.C. 1983) (citing Arant v. First S. Co., 153 S.E.2d 919 (1967)).  Of course,

the issue with Velarde is that she avers that she did not sign an Arbitration Agreement and no such

agreement has been located with her signature.  However, Defendants' position that the law

applicable to this issue is Oklahoma law because it is headquartered there and the contract was

drafted there is unavailing.  Defendants' argument for why Velarde should be subject to the terms

of the Arbitration Agreement is that Covercraft required every employee to sign the agreement and

would have terminated any employee who refused to sign it; therefore, Velarde must have signed

it.  Given that Verlarde worked in California, she would have signed the Arbitration Agreement in California.  Further, to the extent Velarde's continued employment manifested her intent to be bound the Arbitration Agreement, discussed in more detail below, that conduct occurred in California.  There is no evidence in the record that Velarde ever traveled to Oklahoma to work for Covercraft.  Further, the Arbitration Agreement for Guldager, who also worked in California, was signed by an HR Assistant in California.  Thus, the reasonable inference is that, if Velarde signed the Arbitration Agreement, an HR Assistant in California also would have signed her agreement.  For these reasons, the law of California, not Oklahoma, applies to the question of whether a binding Arbitration Agreement exists between Velarde and Defendants.

Under California law, "the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense[.] " Serafin v. Balco Properties Ltd., LLC, 235 Cal.App.4th 165, 172–73, 185 Cal.Rptr.3d 151 (2015).   The absence of an Arbitration Agreement signed by Velarde does not foreclose the issue of whether Velarde is bound by the terms of the agreement.   The Serafin court specifically addressed an arbitration agreement in the employment context where one party did not sign the arbitration agreement:

> the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement. In Banner Entertainment, Inc. v. Superior Court (1998) 62 Cal.App.4th 348, 72 Cal.Rptr.2d 598, the court explained, "it is not the presence or absence of a *signature* [on an agreement] which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (Id. at p. 361, 72 Cal.Rptr.2d 598, original italics.) Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on "conduct from which one could imply either ratification or implied acceptance of such a provision." (Ibid.; see Craig v. Brown & Root, Inc. (2000) 84 Cal.App.4th 416, 420-423, 100 Cal.Rptr.2d 818 [despite absence of a signed writing acknowledging receipt of the memorandum and brochure containing the arbitration provision, the employee's continued employment constituted implied acceptance of the agreement].)

-10-

<u>Id.</u> at 176.  Though the <u>Serafin</u> court addressed the lack of signature by the employer, other California courts have addressed the circumstance present here where there was no signature by the employee.  "California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." <u>Diaz v. Sohnen Enterprises</u> 34 Cal.App.5th 126, 130  (2019) (collecting cases).  The Arbitration Agreement in the present case specifically provides that "Employee understands and acknowledges that <u>by accepting and/or continuing employment with the Company, and thereby agreeing to the terms of the DRP,</u> that both Employee and the Company give up the right to trial by jury in a court of law for all employment related disputes."  Arbitration Agreement (emphasis added).  However, there is no specific evidence in the record that Verlarde actually received a copy of the Arbitration Agreement.  The evidence in the record reveals only that Covercraft implemented a mandatory arbitration program for all its employees in 2016 and Velarde was employed by Covercraft as part of its California operations at that time.  Klause Aff. ¶¶ 4, 9.   "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement. " <u>Serafin,</u> 235 Cal.App.4th at 172–73. Defendants have failed to present sufficient evidence to show that Velarde is bound by the terms of the Arbitration Agreement.  Because an issue of fact exists as to whether a valid arbitration agreement exists between Velarde and Defendants, the court cannot compel Velarde to arbitration based on the record presented.  <u>See</u> 9 U.S.C. § 4 (providing for the right to a jury trial on the issue whether a valid agreement to arbitrate exists).

### 2.    Thomerson

Thomerson also argues that he never entered into an arbitration agreement with Defendants because his wife, not him, signed the Arbitration Agreement.  He avers that he was out of town

when Upton contacted him to tell him that it was imperative that he return his employment documents immediately. Because Covercraft was in such a rush to receive the documents, Thomerson's wife signed them instead of him so that they could be returned immediately. He avers that he never read the Arbitration Agreement. Thomerson lived and worked in South Carolina, his wife was in South Carolina when she signed the Arbitration Agreement, and Upton also worked in South Carolina. Thus, South Carolina law applies to the determination of whether a contract exists between Thomerson and Covercraft.

Defendants argue that Thomerson's wife was acting on behalf of Thomerson when she signed the Arbitration Agreement and, thus, Thomerson is bound by the terms of the agreement. "'The relationship of agency between a husband and wife is governed by the same rules which apply to other agencies[,] ... [and] no presumption arises from the mere fact of the marital relationship.'" Stiltner v. USAA Cas. Ins. Co., 395 S.C. 183, 189, 717 S.E.2d 74, 77 (Ct. App. 2011) (quoting Bankers Trust of S.C. v. Bruce, 283 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct.App.1984). "Under such rules, 'the relationship of agency need not depend upon express appointment and acceptance thereof. Rather, the agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case.'" Id. (quoting Nationwide Mut. Ins. Co. v. Prioleau, 359 S.C. 238, 242, 597 S.E.2d 165, 168 (Ct.App.2004)). "Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief." Thompson v. Pruitt Corp., 416 S.C. 43, 54–55, 784 S.E.2d 679, 686 (Ct. App. 2016) (quoting Froneberger v. Smith, 406 S.C. 37, 47, 748 S.E.2d 625, 630 (Ct. App. 2013)).[3]

---

[3]Thompson falls within a line of cases where South Carolina courts have held that a family member does not have authority to bind a resident of a health care facility to an arbitration agreement. Thompson, 416 S.C. 43, 784 S.E.2d 679; Hodge v. UniHealth Post-Acute Care of

Here, the record reflects that a human resources representative contacted Thomerson and expressed an urgent need for him to return his employment documents and, as a result, Thomerson's wife signed and returned the documents.  There is no evidence in the record that Thomerson's wife acted without his knowledge or consent or that she had any knowledge independent of Thomerson that the documents needed to be returned prior to Thomerson returning home. The reasonable inference from Thomerson's affidavit is that he asked his wife to sign the documents on his behalf. Thomerson should have realized that allowing his wife to sign employment documents would likely lead his employer to believe that he had signed them.  Further, Thomerson cannot avoid the Arbitration Agreement because he failed to read the agreement prior to allowing his wife to sign it on his behalf.  A party to a contract has a duty to read the contract and learn its contents before signing it. Burwell v. South Carolina Nat. Bank, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) (citing J.B. Colt Co. v. Britt, 129 S.C. 226, 123 S.E. 845 (1924)).

### 3.     Patel

All Plaintiffs argue that they did not enter into agreements to arbitrate with Defendant Patel.  State law applies to determine whether a non-party to an arbitration agreement can enforce the agreement.  See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631-32, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (holding that the court must determine whether "the relevant state contract law allows [a nonparty] to enforce the [arbitration] agreement"); GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, —— U.S. ——, 140 S. Ct. 1637, 1644, 207 L.Ed.2d

---

Bamberg, LLC, 422 S.C. 544, 813 S.E.2d 292 (Ct. App. 2018); Coleman v. Mariner Health Care, Inc., 407 S.C. 346, 755 S.E.2d 450 (2014).  These cases are distinguishable in that they find that the authority to make decisions concerning a patient's health care does not translate to authority to bind the party to arbitration, and none of them include a circumstance where, as here, the party attempting to avoid binding arbitration allowed another individual to sign the arbitration agreement on his behalf.

1 (2020) (recognizing that "Chapter 1 of the [FAA] permits courts to apply state-law doctrines related to the enforcement of arbitration agreements," including "doctrines that authorize the enforcement of a contract by a nonsignatory").  Thus, the court must apply the laws of the state where each contract was formed.  As set forth above, Velarde and Guldager's Arbitration Agreements were formed in California and Thomerson's Arbitration Agreement was formed in South Carolina.  White's Arbitration Agreement was formed in California as well.  White Aff. ¶ 1 (ECF No. 17-5) (averring that she lived in California when she signed the Arbitration Agreement).

It is undisputed that Patel is not a party to the Arbitration Agreements like Covercraft is. However, the Arbitration Agreements specifically provide that the DRP covers all claims or disputes with the "Company's owners, directors, managers, [and] other employees." Arbitration Agreement ¶ 5.  Patel is the CEO of Covercraft.

In South Carolina, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Pearson v. Hilton Head Hosp., 400 S.C. 281, 288, 733 S.E.2d 597, 600 (Ct. App. 2012) (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000)).  "South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel." Wilson v. Willis, 426 S.C. 326, 338, 827 S.E.2d 167, 174 (2019).  Patel was incorporated by reference into the Arbitration Agreement through the paragraph that provides that all claims or disputes related to or arising out of the employee's employment with the Company, including claims against the "Company's owners, directors, managers, [and] other employees." The South Carolina Supreme Court has held that the President of a company was entitled to compel

arbitration when a arbitration agreement existed between the plaintiff and the company.  See S.C. Pub. Serv. Auth. v. Great W. Coal (Kentucky), Inc., 312 S.C. 559, 563, 437 S.E.2d 22, 24 (1993). Plaintiffs' claims against Patel arise out of their employment with Covercraft, of which he is the CEO.  Therefore, under South Carolina law, Patel may enforce the Arbitration Agreement against Thomerson.

The same result exists under California law, which provides that "[u]nder certain circumstances, a nonsignatory to an arbitration agreement may seek to enforce it against a signatory." Ford Motor Warranty Cases, 89 Cal. App. 5th 1324, 1332, 306 Cal. Rptr. 3d 611, 618 (2023).  California courts have recognized a non-signatory's ability to compel arbitration against a party to the agreement under theories of " ' "incorporation by reference; [ ] assumption; [ ] agency; ... [equitable] estoppel; and [ ] third-party beneficiary." ' " Jarboe v. Hanlees Auto Group 53 Cal.App.5th 539, 549, 267 Cal.Rptr.3d 640 (2020) (citing Suh v. Superior Ct., 181 Cal. App. 4th 1504, 1513, 105 Cal. Rptr. 3d 585, 593 (2010)). These exceptions generally apply where there is a relationship between the nonsignatory and the signatory—such as an employment or agency relationship—" 'where a sufficient "identity of interest" exists between them.'" DMS Services, LLC v. Superior Court 205 Cal.App.4th 1346, 1353, 140 Cal.Rptr.3d 896 (2012).  For the same reasons discussed above, Patel may enforce the Arbitration Agreements against White, Guldager, and Velarde.  See, e.g., Michaelis v. Schori 20 Cal.App.4th 133, 135, 139 (1993) (holding that a nonsignatory employee or associate could invoke an arbitration agreement against a plaintiff who was a party thereto because the contract provided that all claims against the employees and associates of the defendant-signatory must be arbitrated); Harris v. Superior Court 188 Cal.App.3d 475, 477, 478–479 (1986) (holding that a doctor-employee of a professional corporation was a third-party beneficiary of an arbitration agreement that covered claims against the professional

corporation and its " 'employees or other contracting health professionals' ").

     **B.**     **Validity/Enforceability of the Arbitration Agreement**

Plaintiffs also argue that the Arbitration Agreement is invalid or unenforceable because it lacks consideration and is unconscionable.  State law applies to these issues as well.  <u>Perry</u>, 482 U.S. at 493.

     **1.**     **Consideration**

Plaintiffs argue that the Arbitration Agreement lacks consideration because the Company's promise to submit to arbitration is illusory where the Company later reserves the right to change, modify, or discontinue the agreement.  The Arbitration Agreement provides that "both Employee and the Company give up the right to trial by jury in a court of law for all employment-related disputes," Arbitration Agreement ¶ 4, but it later states that "the Company reserves the right to change, modify, or discontinue the DRP at any time, for any reason upon prior written notice of at least ten (10) business days to the Company's current employees."  Arbitration Agreement ¶ 18. However, it also states that "the terms of the DRP in effect at the time a request for arbitration is made will be binding on Employee and the Company" and "no amendment or termination shall apply to a dispute or claim for which a proceeding has been initiated."  <u>Id.</u>

It appears South Carolina courts have not addressed the issue of whether a mutual promise to arbitrate is illusory when the employer retains the right to revoke that promise.  However, in California, courts routinely hold that a contract provision allowing for the modification of the contract does not render the agreement illusory.  <u>See</u> <u>Fuentes v. Empire Nissan, Inc.</u>, 90 Cal. App. 5th 919, 934, 307 Cal. Rptr. 3d 512, 523 (2023) (citing <u>24 Hour Fitness, Inc. v. Superior Court</u>, 66 Cal.App.4th 1199, 1214, 78 Cal.Rptr.2d 533  (1998) ("the modification provision does not render the contract illusory"); <u>Serpa v. California Surety Investigations, Inc.</u>, 215 Cal.App.4th 695, 706,

155 Cal.Rptr.3d 506 (2013) ("it has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract"); Harris v. TAP Worldwide, LLC ,248 Cal.App.4th 373, 389, 203 Cal.Rptr.3d 522 (2016) ; Avery v. Integrated Healthcare Holdings, Inc. ,218 Cal.App.4th 50, 61, 159 Cal.Rptr.3d 444 (2013) ("An arbitration agreement between an employer and an employee may reserve to the employer the unilateral right to modify the agreement."); Serafin v. Balco Properties Ltd., LLC 235 Cal.App.4th 165, 176 (2015) ("Because California law prevents a party from exercising a discretionary power, such as the power to modify, in bad faith or in a way that deprives the other party of the benefits of the agreement, [the defendant's] right to modify its 'policies or practices at any time' does not render the arbitration agreement illusory."); see generally, Asmus v. Pacific Bell 23 Cal.4th 1, 16, 96 Cal.Rptr.2d 179, 999 P.2d 71 (2000) (employer's unilateral right to modify employment agreement does not make agreement illusory); cf. Peleg v. Neiman Marcus Group, Inc. 204 Cal.App.4th 1425, 1433, 140 Cal.Rptr.3d 38 (2012) ("If a modification provision is restricted—by express language or by terms implied under the covenant of good faith and fair dealing—so that it exempts all claims, accrued or known, from a contract change, the arbitration contract is not illusory.")).

Even in the absence of South Carolina law on the issue of whether valid consideration exists when one party reserves the right to modify the agreement, the Arbitration Agreement at issue here is still supported by adequate consideration under South Carolina law because continued employment is sufficient consideration to support an arbitration agreement.   Pitt v. Wells Fargo Bank, Nat'l Assoc., No. 3:21-cv-3428-JFA-TER, 2022 WL 2068851, at *4 (D.S.C. Apr. 1, 2022), report and recommendation adopted, No. 3:21-CV-3428-JFA-TER, 2022 WL 1421120 (D.S.C. May

4, 2022) ("In South Carolina, continued at-will employment constitutes sufficient consideration for

an arbitration agreement."); Towles v. United HealthCare Corp., 338 S.C. 29, 40, 524 S.E.2d 839,

845 (Ct. App. 1999) (noting that an employee's continued employment constituted acceptance and

sufficient consideration to make arbitration agreement binding); Marzulli v. Tenet S.C., Inc., No.

2015-002363, 2018 WL 1531507, at *4 (S.C. Ct. App. Mar. 28, 2018) ("[W]e have held continued

employment sufficient consideration to support arbitration agreements.").

   The same holds true under California law.  See, e.g., Katherman v. Den 104, L.L.C., No.

E028869, 2001 WL 1191454, at *2 (Cal. Ct. App. Oct. 3, 2001) (noting that California courts have

routinely held that contracts with continued employment as the consideration are enforceable);

Asmus v. Pacific Bell,23 Cal.4th 1, 14, 96 Cal.Rptr.2d 179, 999 P.2d 71 (2000); Lagatree v. Luce,

Forward, Hamilton & Scripps , 74 Cal.App.4th 1105, 1109, 1127, 88 Cal.Rptr.2d 664 (1999);

DiGiacinto v. Ameriko-Omserv Corp., 59 Cal.App.4th 629, 638, 69 Cal.Rptr.2d 300 (1997).

   Therefore, under both South Carolina and California law, the Arbitration Agreement is

supported by sufficient and valid consideration.

### 2.    Unconscionable

   Plaintiff also argues that the Arbitration Agreement is unconscionable because it is an

adhesion contract, they were forced to accept the agreement to remain employed, the terms are one-

sided, and Covercraft reserves the right to change, modify, or discontinue the agreement. A court

may invalidate an arbitration clause based on defenses applicable to contracts generally, including

unconscionability. Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 251, 137 S. Ct. 1421,

1426, 197 L.Ed.2d 806 (2017).

   Under South Carolina law, to prove the arbitration provision unconscionable, Plaintiffs must

show that (1) they lacked a meaningful choice as to whether to arbitrate because the Arbitration

Agreement's provisions were one-sided, and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them. <u>Simpson v. MSA of Myrtle Beach, Inc.</u>, 373 S.C. 14, 24–25, 644 S.E.2d 663, 668 (2007).  Adhesion contracts, i.e., contracts offered on a "take-it-or-leave-it" basis with terms that are not negotiable, are not per se unconscionable. <u>Id.</u> at 27 (citing <u>Munoz v. Green Tree Fin. Corp.</u>, 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)).  "The distinction between a contract of adhesion and unconscionability is worth emphasizing: <u>adhesive contracts are not unconscionable in and of themselves so long as the terms are even-handed.</u>" <u>Damico v. Lennar Carolinas, LLC</u>, 879 S.E.2d 746, 756 (S.C. 2022) (emphasis in original). Ultimately, "unconscionability requires a finding of a lack of meaningful choice <u>coupled with</u> unreasonably oppressive terms. Thus, an adhesion contract with fair terms is certainly not unconscionable . . . ." <u>Id.</u> (emphasis added).  Plaintiff points to no oppressive terms in the Arbitration Agreement and, thus, fails to show that it is unconsicanable under South Carolina law. <u>See</u>, <u>e.g.</u>, <u>Hamlin v. Dollar Tree Stores, Inc.</u>, No. 2:17-CV-2648-PMD, 2017 WL 6034325, at *1 (D.S.C. Dec. 6, 2017) (applying South Carolina law and enforcing arbitration agreement where the plaintiff claimed that the agreement was "buried among other work training documents," no one explained the agreement to her, and the agreement was mandatory).

        Under California law, the test for unconscionability is essentially the same though it is set forth in different terms.  "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." <u>Serpa v. California Sur. Investigations, Inc.</u>, 215 Cal. App. 4th 695, 704, 155 Cal. Rptr. 3d 506, 512 (2013), as modified (Apr. 19, 2013), as modified (Apr. 26, 2013).  However, where there is no other indication of oppression or surprise, "the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be

-19-

enforceable unless the degree of substantive unconscionability is high." Id. (citing Ajamian v. CantorCO2e; 203 Cal.App.4th 771, 796, 137 Cal.Rptr.3d 773 (2012)).  A high level of substantive unconscionablity is akin to South Carolina's unreasonably oppressive terms.  As stated above, Plaintiffs have identified no such terms in the contract.  Therefore, they fail to show unconscionability under California law as well.

In sum, based upon the record presented, each of the Plaintiffs entered into a valid agreement to arbitrate their claims with Covercraft, which includes their claims against Covercraft's CEO, Patel.  Thus, arbitration is appropriate.

### C.   Transfer

The Arbitration Agreement includes a forum selection clause that requires any arbitration to take place in Oklahoma City, Oklahoma.  Arbitration Agreement ¶ 16.  This court has previously addressed the dilemma that arises when a petition to compel arbitration is filed in a district other than the district where the parties agreed to arbitrate:

> Section 4 of the FAA provides that "[t]he hearing and proceedings, under [an arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Section 4 further dictates that if the court determines that arbitration should occur, the court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. "Those two mandates, read together, 'can create a perplexing dilemma' " in which arbitral proceedings may either occur outside of the district in which the motion for arbitration was filed or occur some place other than where the parties agreed to arbitrate. Sunbelt Residential Acquisitions, LLC v. Crowne Lake Assocs., Ltd. P'ship, 2021 WL 512228, at *7 (M.D.N.C. Feb. 11, 2021), report and recommendation adopted, 2021 WL 7186398 (W.D.N.C. Mar. 2, 2021). That exact dilemma was presented here: the EasyKnock defendants filed a motion requesting an order to arbitrate in the District of South Carolina, but the terms of the arbitration agreement specifically provide that "[a]ny arbitration initiated by Tenant or Landlord shall be initiated in New York, New York." ECF No. 1-9 at 16. The majority of courts resolve the dilemma by finding that "where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA." Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc., 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) (collecting cases); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir.

1995) ("[W]here the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless."). This court has adopted the same approach before. See Kiawah Island Utility, Inc. v. Westport Ins. Corp., 2019 WL 5394200, at *4 (D.S.C. Oct. 22, 2019) (finding that because "the petition must be brought in the arbitration forum to comport with § 4," the court was required to transfer the case to the Southern District of New York); Brumfield v. Kindred Healthcare Inc., 2018 WL 3222614, at *3 (D.S.C. July 2, 2018) ("Because plaintiffs are bound to arbitrate in different states and this court cannot compel them to arbitration, the court transfers their cases to their respective districts to enable those courts to compel them to arbitration.").

Deloach v. EK Real Est. Servs. of NY, LLC, No. 9:22-CV-01449-DCN, 2022 WL 17625911, at *6 (D.S.C. Dec. 13, 2022). Given this line of cases, the undersigned agrees because the Arbitration Agreement provides that arbitration must take place in Oklahoma City, Oklahoma, this court cannot enter an order compelling the parties to arbitration in that forum. Therefore, transfer to the United States District Court for the Western District of Kentucky is necessary.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss the Case and Compel Arbitration or, in the Alternative, to Transfer (ECF No. 15) be granted only as to Plaintiffs Thomerson, Guldager, and White. It is further recommended that the motion be denied as to Plaintiff Velarde, that her claims be severed from the remaining Plaintiffs, and that the remaining Plaintiffs' claims be transferred to the Western District of Kentucky.

                                             s/Thomas E. Rogers, III
                                             Thomas E. Rogers, III
                                             United States Magistrate Judge

January 22, 2024
Florence, South Carolina