IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PHALA E. VELARDE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:23-cv-02225-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| COVERCRAFT INDUSTRIES, LLC, and | ) | |
| JASBIR PATEL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court regarding discretionary transfer of the case

pursuant to 28 U.S.C. § 1404(a).  It is also before the court on plaintiff Phala E. Velarde's

("Velarde") motion for default judgment.  ECF No. 44.  For the reasons set forth below,

the court **DENIES** the motion for default judgment and **TRANSFERS** the case to the

Eastern District of California.

## I.  BACKGROUND

This dispute arises from Velarde's employment with defendant Covercraft

Industries, LLC ("Covercraft") as a sales management employee.[1]  Within the past

several years, Covercraft was acquired by private equity hedge funds—first by Century

Park Capital Partners and more recently by Audax Private Equity ("Audax").[2]  Relevant

to this suit, Audax installed defendant Jasbir Patel ("Patel") (together with Covercraft,

"defendants") to lead its management takeover team after the acquisition with the

---

[1] Unless otherwise indicated, the facts are taken from the complaint.  ECF No. 1,
Compl.
[2] Velarde's complaint describes Audax as being based in Boston and San
Francisco and working as a leading middle market investment firm that uses a
"disciplined buy-and-build approach."  Compl. ¶ 7.

purpose of overhauling the company and increasing the company's value in a future sale.

One strategy used was to reduce the cost of the Covercraft payroll by instituting a mass

layoff of Covercraft employees (the "Private Equity Layoff Strategy").  On March 1,

2023, defendants called each of the plaintiffs,[3] and, in some cases, followed up with an

email, to inform them that their employment with Covercraft was terminated, that their

Covercraft computer connections would be turned off in ten minutes, and that their

positions were being eliminated.  Velarde alleges that the termination decisions were

impermissibly based on age and gender.

Velarde alleges that the Private Equity Layoff Strategy unequally targeted older

employees for termination.  As of that date of termination, Velarde was sixty-four years

old.  Velarde points to three examples which allegedly demonstrate that defendants

impermissibly terminated her employment and that of two other former sales

management employees over the age of sixty—John A. Thomerson ("Thomerson") and

Erik Guldager ("Guldager")—on the basis of their ages.[4]  First, in or around January

2023, at a Covercraft manager meeting, Guldager asked Patel a question about a

---

[3] Four plaintiffs originally brought this action: Velarde, John A. Thomerson
("Thomerson"), Erik Guldager ("Guldager"), and Elizabeth White ("White").  ECF No.
1, Compl.  On March 25, 2024, this court issued an order which granted the defendants'
motion to transfer, ultimately transferring Thomerson, Guldager, and White's claims to
the Western District of Oklahoma pursuant to the forum selection clauses in their
respective arbitration agreements with Covercraft.  ECF No. 40.  The court, however,
found that Velarde was not bound by an arbitration agreement and that the § 1404(a)
factors did not favor transfer of her claim to Oklahoma.  Id. at 1–2.

[4] At the time of their termination, Thomerson was sixty-six years old, Guldager
was sixty-three years old, and Velarde was sixty-four years old.  Compl. ¶¶ 1, 12, 25.
Covercraft also terminated Elizabeth White ("White") who, at that time was thirty-six
years old.  Id.  Covercraft did not terminate two sales management emplopyees: (1)
Robert Horvath, a fifty-six-year-old male, and (2) Rick Elias, a forty-eight-year-old male.
Id.

proposed action, and Patel allegedly responded, "you're too old to understand."  Second,

Velarde alleges that Patel, who is around fifty years old, has surrounded himself with a

management takeover team which consists of individuals who are around forty years of

age.  Third, Velarde emphasizes that defendants chose to terminate all of the employees

who were in their sixties, with the remaining sales representatives being fifty-six, forty-

eight, and thirty-six years of age.[5]

Velarde also alleges that the Private Equity Layoff Strategy unequally targeted

women employees for termination.  First, Patel staffed his management takeover team

primarily with men, with only one female vice president included.  Second, at the SEMA

Show in Las Vegas, Nevada, Patel allegedly addressed Velarde and another female

employee Elizabeth White ("White") with the question, "Am I supposed to know who

you are?" which is a condescension he allegedly did not direct toward any male

management attendees.  Third, even though White and Velarde were the only two female

sales management employees of the six in that Decisional Unit, "they constituted fifty

percent of those sales management employees adversely affected"[6] by the layoffs.

Altogether, Velarde relies on these allegations to conclude that defendants' decision to

layoff White and Velarde was motivated by an impermissible sex animus.

On May 24, 2023, Velarde and three other plaintiffs filed a complaint alleging

seven causes of action.[7]  ECF No. 1, Compl.  On March 25, 2024, the court granted, in

---

[5] The thirty-six-year-old employee was Elizabeth White who was also terminated.
Compl. ¶ 25.
[6] The court infers that the defendants laid off four of the six sales management
employees, which included White and Velarde.
[7] Velarde's causes of action are detailed in turn: (1) age discrimination in
violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et
seq., Compl. ¶¶ 56–60; (2) sex discrimination in violation of Title VII of the Civil Rights

part, defendants' motion to transfer and transferred Thomerson, Guldager, and White's

claims to the Western District of Oklahoma pursuant to the forum selection clauses

included in their respective arbitration agreements.  ECF No. 31.  The court severed and

retained Velarde's claims upon finding that she was not bound by an arbitration

agreement and noted that it was inclined to transfer the case to a district court in

California pursuant to 28 U.S.C. § 1404(a).  Id. at 1–2 & n.2.  It directed the parties to

submit briefs on the question of transfer to California within twenty-one days of the filing

of the order, should the party wish to be heard on the question of transfer.  Id.  On April

15, 2024, Velarde filed a brief opposing transfer of the case to California.  ECF No. 43.

Defendants did not file a brief.  Three days later, on April 18, 2024, Velarde filed a

motion for default judgment.  ECF No. 44.  Defendants responded in opposition to that

motion on May 2, 2024, ECF No. 46, to which Velarde replied on May 4, 2024, ECF No.

47.  As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Motion for Default Judgment

Securing a default judgment is a two-step process.  First, upon a defendant's

failure to plead or otherwise defend within the permissible period for response, a plaintiff

must file a motion requesting the clerk of court for an entry of default.  Fed. R. Civ. P.

55(a).  Second, where the plaintiff's claim is not for sum certain, he or she must "apply to

---

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., id. ¶¶ 61–65; (3) breach of contract, id. ¶¶ 66–68; (4) breach of contract accompanied by fraudulent act, id. ¶¶ 69–74; (5) promissory estoppel, id. ¶¶ 75–79; (6) violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2102 et seq., id. ¶¶ 80–82; and (7) false light, id. ¶¶ 83–85.  Compl.  Velarde's third, fourth, fifth, and seventh causes of action are presumably brought pursuant to South Carolina common law, which the court infers from her citations to South Carolina caselaw.  See id. ¶¶ 66–78, 83–85.

the court for a default judgment." Fed. R. Civ. P. 55(b)(2).  After a court has received an

application, Rule 55 gives it great discretion in determining whether to enter or effectuate

judgment, including the power "to take an account or to determine the amount of

damages or to establish the truth of any averment by evidence or to make an investigation

of any other matter."  Id.; see also United States v. Ragin, 113 F.3d 1233 (4th Cir. 1997).

Once the clerk has entered default against a defendant, the court, in considering

the plaintiff's application for default judgment, accepts a plaintiff's well-pleaded factual

allegations as true.  See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir.

2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)).

However, the defendant is not held to have admitted conclusions of law, Ryan, 253 F.3d

at 780 (citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.

1975)), or allegations that concern only damages, Dundee Cement Co. v. Howard Pipe &

Concrete Prod., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States,

323 U.S. 1 (1944)).

Thus, a court considering default judgment must still determine if the established

factual allegations constitute a legitimate cause of action and provide a sufficient basis

the relief sought.  See Ryan, 253 F.3d at 780 ("The court must, therefore, determine

whether the well-pleaded allegations in Appellants' complaint support the relief sought in

this action."); see also Silvers v. Iredell Cnty. Dep't of Soc. Servs., 2016 WL 427953, at

*4 (W.D.N.C. Feb. 3, 2016), aff'd, 669 F. App'x 182 (4th Cir. 2016).  "The party moving

for default judgment must . . . show that the defaulted party was properly served and that

the unchallenged factual allegations constitute a legitimate cause of action."  Harris v.

Blue Ridge Health Servs., Inc., 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal

citations and quotation marks omitted).  If the court determines that the allegations entitle

the plaintiff to relief, it must then determine the appropriate amount of damages.  Id.

### B.  Discretionary Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought."  28 U.S.C. § 1404(a).  "Decisions whether to transfer a case pursuant to

28 U.S.C. § 1404 are committed to the discretion of the transferring judge."  Herring v.

LaPolla Indus., Inc., 2013 WL 12148849, at *3 (D.S.C. Oct. 7, 2013) (quoting Brock v.

Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991)).  A district court may

transfer a case to another district sua sponte.  Sadighi v. Daghighfekr, 36 F. Supp. 2d 267,

278 (D.S.C. 1999); Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306,

321 (D.S.C. 1992) (noting that the parties deserve an opportunity to be heard before

transfer).  In making the transfer decision, a court must consider four primary factors:

"(1) the weight accorded [the] plaintiff's choice of venue; (2) witness convenience and

access; (3) convenience of the parties; and (4) the interest of justice."  Trs. of the

Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444

(4th Cir. 2015).

### III.   DISCUSSION

### A.  Default Judgment

Federal Rule of Civil Procedure 55(a) specifies that "[w]hen a party against whom

a judgment for affirmative relief is sought has failed to plead or otherwise defend, and

that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

The court finds that default is not appropriate in this case.  See ECF No. 44 at 2.

Defendants correctly identify that a close reading of Federal Rule of Civil Procedure

12(a)(4)(A) indicates that default is unwarranted.  ECF No. 46 at 1–2.  In relevant part,

Rule 12(a)(4) specifies that "[u]nless the court sets a different time," a responsive

pleading must be served within fourteen days after notice of the court's action on a Rule

12 motion.  Fed. R. Civ. P. 12(a)(4) (emphasis added).  In its previous order, this court

specified multiple times that the parties were directed to file briefs, should the party wish

to be heard on the question of transfer to a court in California, within twenty-one days of

the filing of the order.  ECF No. 40 at 2 n.2, 41–42 n.21.  The court filed its order on

March 25, 2024, meaning that the deadline to file briefs was April 15, 2024.  See id.  In

other words, the court set a different time.  See id.  Consequently, defendants did not fail

to plead or otherwise defend in violation of Rule 12(a)(4)(A).  Id.; Fed. R. Civ. P.

12(a)(4).  As such, Velarde's motion for default judgment—which was filed three days

after the court's deadline to file responsive briefs on the question of transfer—is

premature and must be denied.  See ECF No. 44.  Upon the denial of that motion, the

court turns to the issue of discretionary transfer to California.

### B.  Discretionary Transfer

In the order resolving the motion to transfer, the court noted that a district court in

California is a more suitable venue for the remaining claims.[8]  ECF No. 40 at 41–42 n.21.

Velarde is a resident and citizen of California.  Compl. ¶ 1.  Covercraft is incorporated in

California.  Id. ¶ 2.  All the facts underlying the causes of action occurred in California,

---

[8] While the issue of transfer is normally raised by motion, the district court may
transfer a case sua sponte if it first gives the parties the opportunity to be heard.  Feller,
802 F.2d at 729.  The court notified the parties of its inclination to transfer the case to a
district court in California and provided the parties with twenty-one days in which to file
briefs opining on the proposed transfer.  ECF No. 40 at 2 n.2.

where Velarde worked and resided at the time she was terminated.  See ECF No. 31, R&R at 3, 8, 10.  Additionally, the court found that it is unclear whether South Carolina or California applies to each of Velarde's causes of action.  ECF No. 40 at 41 n.21.  The court instructed the parties to file briefs should they wish to be heard on the question of discretionary transfer to a district court in California.  Id.

Velarde filed a brief opposing transfer to California.[9]  ECF No. 46.  She first highlights that she originally brought the case in conjunction with three other plaintiffs who will likely be important witnesses to the defendants' alleged misconduct.  Id. at 2.  One of those witnesses resides in South Carolina, with the other two residing in Florida and Texas.  Id.  Thus, a South Carolina forum is more convenient to at least one witness.  Id.  Velarde also emphasizes that though Covercraft is incorporated in California, its principal place of business is in Oklahoma.  Id.  Moreover, Patel resides in Chicago, Illinois.  Id.  Consequently, a California forum would likely be no more convenient for either party than a South Carolina forum.  Id.  Velarde emphasizes that her counsel of choice is in South Carolina.  Id.  Finally, she argues that her choice of forum should be accorded weight.  Id.  To the extent the court transfers the case to California, Velarde notes that she worked from home while she was employed at Covercraft, and that home is located near Bakersfield, in the Eastern District of California.  Id.

First, the court concludes that Velarde could have filed this case in the District Court for the Eastern District of California.  Covercraft is incorporated in California, Velarde resides in California, and many of the events giving rise to this case occurred

---

[9] Defendants opted to not file briefs on the question of transfer.

while Velarde worked for Covercraft from her home near Bakersfield, California.[10]

Compl. ¶¶ 1–2; ECF No. 46 at 2.  As such, Velarde could have originally brought this

case in the District Court for the Eastern District of California, as required by § 1404(a).

See Dolan v. Ford Motor Co., 2023 WL 8627521, at *4 (E.D. Va. Dec. 13, 2023) ("The

general rule is that a case might have been brought in any district where venue and

jurisdiction would be proper.").  Second, the court considers the four primary factors,

ultimately concluding that Velarde's choice of venue, witness convenience and access,

the convenience of the parties, and the interest of justice, on balance, weigh in favor of

transfer.  See Plumbers & Pipefitters Nat'l Pension Fund, 791 F.3d at 444.

### 1.  Velarde's Choice of Venue

Courts generally give "substantial weight" to the plaintiff's choice of forum.  See

id. (quoting Bd. of Trs. v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D.

Va. 2007)).  However, the deference given to the plaintiff's choice varies and is

proportionate to the connection between the chosen forum and cause of action.  See id.;

Sullivant Ave. Props., 508 F. Supp. 2d at 477; Bannister v. Wal-Mart Stores E., L.P., 843

F. Supp. 2d 610, 615 (E.D.N.C. 2012); see also Cluck-U, Corp. v. Cluck-U Chicken, Inc.,

2016 WL 9526438, at *2 (D. Md. May 27, 2016) ("The statute does not indicate how

much weight the Court should give to each factor.").  When this relationship between the

cause of action and the forum are stronger, courts should give more weight to the

plaintiff's choice.  Sullivant Ave. Props., 508 F. Supp. 2d at 477.  Conversely, courts give

less weight to a plaintiff's choice of forum when "(1) the plaintiff chooses a foreign

---

[10] Velarde brought this case pursuant to federal question jurisdiction, 28 U.S.C.
§ 1331, such that the lack of complete diversity does not impact the Eastern District of
California's subject matter jurisdiction.  Compl. ¶ 4.

forum, or (2) the cause of action bears little or no relation to the chosen forum."  Speed

Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 803 (M.D.N.C.

2008); accord Brumfield v. Kindred Healthcare Inc., 2018 WL 3222614, at *5 (D.S.C.

July 2, 2018).

  Velarde's choice of forum is entitled to little weight because Velarde is not a

resident of South Carolina and because South Carolina has little to no interest or

connection with the dispute at hand.  Compl. ¶ 1.  The facts underlying Velarde's alleged

tort claims and breach of contract claims occurred outside of South Carolina.  See id.

¶¶ 11–13, 18, 56–85.  To be sure, at the time the plaintiffs filed the complaint, one of the

four named plaintiffs, Thomerson, resided and worked for Covercraft in South Carolina.

Id. ¶ 1.  Upon the transfer of Thomerson's claims to Oklahoma, the court finds that

Velarde's claims have no connection with South Carolina.  See ECF No. 40 at 1; see also

Int'l Union, United Mine Workers of Am. v. CONSOL Energy, Inc., 465 F. Supp. 3d

556, 585 (S.D. W. Va. 2020) ("Having lost the plaintiff who was the only resident of this

district, the court finds that the plaintiffs' choice of venue in this forum is entitled to less

weight than in regular circumstances where the plaintiffs remain unchanged.").  As a

result, while Velarde's choice of a South Carolina forum is accorded some weight, that

weight is lessened because of the limited relevance, if any, that South Carolina has to

Velarde's claims.  See Blevins v. Pension Plan for Roanoke Plant Hourly Emps. of ITT

Indus. Night Vision, 2011 WL 2670590, at *6 (D.S.C. July 8, 2011); Brumfield, 2018

WL 3222614, at *5; Speed Trac Techs., 567 F. Supp. 2d at 803.

### 2.  Witness Convenience and Access

"The convenience of witnesses is an important consideration in determining whether to grant or deny a motion to transfer venue."  Milliken & Co. v. Reynolds, 2012 WL 5354399, at *5 (D.S.C. Oct. 26, 2012).  When evaluating this factor, the court must consider both the number of witnesses as well as "the nature and quality of the testimony, the distances and inconveniences involved."  Mims v. Proctor & Gamble Distrib. Co., 257 F. Supp. 648, 655 (D.S.C. 1966).  However, "[w]itness convenience is 'not merely a battle of numbers favoring the party that can provide the longest list of witnesses it plans to call," Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 718–19 (E.D. Va. 2005), and "transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other," Heinz Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010).  The party asserting witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience."  Va. Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 870 (E.D. Va. 2013) (citing Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003)).

Courts distinguish between party witnesses and non-party witnesses.  HDMG Ent., LLC v. Certain Underwriters at Lloyd's of London Subscribing to Pol'y No. L009082, 2017 WL 367967, at *5 (D.S.C. Jan. 25, 2017).  Party witnesses are presumed to be more willing to testify in a different forum because they are closely aligned with the party, whereas non-party witnesses are not given such presumption.  Id.  Therefore, greater weight is afforded to the convenience of non-party witnesses rather than party

witnesses.  Id.  Party witnesses include employees of a party.  See Wright & Miller, 15

Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are

employees of a party is entitled to less weight because that party can obtain their presence

at trial."); Va. Innovation Scis., 928 F. Supp. 2d at 871.

Velarde predicts that White, Guldager, and Thomerson will serve as witnesses

who purportedly suffered the same mistreatment by defendants.  ECF No. 43 at 2–3.

They respectively live in Texas, Florida, and South Carolina, and Velarde claims that

South Carolina is more convenient for them than California.  Id.  Velarde also

emphasizes that she worked from her home in Bakersfield, California.  Id.  That means

that she did not work from any Covercraft office or location in California, and, therefore,

it is likely that there would not be any local defense witnesses in California.  Id.

Moreover, upon information and belief, Patel and multiple other members of the

management team brought in with the Audax acquisition are based in the Chicago area.

Id.  Thus, Velarde posits that flights to California would not necessarily be any more

convenient for these potential witnesses than flights to Charleston, South Carolina.  Id.

Initially, the court observes that almost all the witnesses the parties might call in

this matter are party witnesses.  See id. at 2–3.  To be sure, White, Guldager, and

Thomerson are no longer plaintiffs in this case, though they were initially included as

such.  See id.  A review of caselaw provides no clarity whether it would be appropriate to

accord the testimony of former co-plaintiffs the weight of party witnesses.  However,

Velarde provides no specific details regarding how their testimony will be material to her

claims and non-cumulative, and, consequently, even if they are to be considered third-

party witnesses, the inconvenience to Thomerson, White, and Guldager is accorded little

weight in the transfer analysis.  See Heinz Kettler GMBH, 750 F. Supp. 2d at 669.

Moreover, the additional witnesses Velarde identifies are all employees of Covercraft,

such that they are accorded the weight of party witnesses.  See id.; Va. Innovation Scis.,

928 F. Supp. 2d at 871.  As such, the facts that are before the court suggest that the

inconvenience to the identified witnesses should play a reduced role in the court's

analysis, because no information has been provided indicating that a particular witness's

testimony will be non-cumulative and material and because party witnesses "are

presumed to be more willing to testify in a different forum."  See Va. Innovation Scis.,

928 F. Supp. 2d at 871; see also Heinz Kettler GMBH & Co., 750 F. Supp. 2d at 669.

Thus, while air travel will be required by most of the witnesses in this case regardless of

whether the court keeps the case or transfers it to California, the court finds no

compelling reason to find California more inconvenient than South Carolina, such that

this factor is neutral.  See id.

### 3.  Convenience of the Parties

"[T]his factor is chiefly operative in cases where the plaintiff chooses a forum

away from (either party's) home."  Dicken v. United States, 862 F. Supp. 91, 93 (D. Md.

1994) (internal quotation marks and citation omitted).  "[28 U.S.C. § 1404(a)] makes no

provision and authorizes no consideration for convenience of counsel."  Wright v. Am.

Flyers Airline Corp., 263 F. Supp. 865, 867 n.4 (D.S.C. 1967) (citations omitted); accord.

In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir. 2004); Solomon v. Cont'l Am. Life

Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973).

Velarde argues that the South Carolina forum is most convenient for her because

her counsel is located here and because this forum is much closer to White, Guldager,

and Thomerson than California.  ECF No. 43 at 2–3.  She also emphasizes that California might not be more convenient for defendants because Covercraft, while incorporated in California, has its principal place of business in Oklahoma and Patel resides near Chicago, Illinois.  Id.  In other words, South Carolina is somewhat inconvenient for everyone except the witness Thomerson, though Velarde argues that California would be much more inconvenient than South Carolina.  See id.

The court first notes that it cannot consider the convenience of Velarde's counsel. See Wright, 263 F. Supp. at 867 n.4.  Indeed, South Carolina would be more convenient for Thomerson, who resides in South Carolina, but the court lacks details as to what he might testify to, beyond his age and the fact that, much like Velarde, Covercraft laid him off.  Compl. ¶¶ 1, 12, 21, 25, 28, 39, 42, 44; ECF No. 43 at 3.  The parties identify no other party witness or non-party witness located in South Carolina.  See ECF No. 43 at 3– 4.  Rather, the remaining party witnesses and non-party witnesses are located in Florida, Texas, Illinois, Oklahoma, and California; therefore, regardless of whether this court retains the case or transfers it to California, parties and witnesses would need to travel. See id.; Compl. ¶ 1.  Importantly, Velarde worked in California at the time when she was laid off and Covercraft was and is incorporated in California.  ECF No. 43 at 2–3.  Given that connection to California, it makes little sense to place the convenience of Thomerson, whose testimony remains undefined, over the likely convenience to the sole remaining plaintiff Velarde, who resides in California, and defendant Covercraft, which is also incorporated in California.  See id.  Altogether, California is a more convenient forum than South Carolina for the parties, which weighs in favor of transfer.

### 4. Interest of Justice

"The 'interest of justice' category is designed broadly.  It is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties."  Blevins, 2011 WL 2670590, at *8 (quoting Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Hearing & Air Conditioning, Inc., 702 F. Supp. 1253, 1260 (E.D. Va. 1988)).  This includes considerations of "the Court's familiarity with the applicable law."  Id.

Velarde submits that the interests of justice weigh in favor of not disturbing her choice of venue, particularly because of its proximity to her witnesses and counsel.  ECF No. 43 at 4.  Further, she submits that transfer to California would increase her legal costs and expenses.  Id.

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599–600 (4th Cir. 2004).  Thus, the court reviews the five claims that Velarde brings pursuant to supplemental jurisdiction, first considering Velarde's tort claims before turning to her contract-based claims, to determine which state's laws govern those claims.  See Compl. ¶¶ 66–79, 83–85.

Velarde's tort claims are governed by California law.  Under South Carolina choice of law rules, tort claims are governed by the substantive law of the state in which the injury occurred—in this case, California.  See Butler v. Ford Motor Co., 724 F. Supp.

2d 575, 581 (D.S.C. 2010).  Consequently, Velarde's combined defamation and false

light cause of action is brought pursuant to California law.  See Compl. ¶¶ 83–85.

Velarde's contract-based claims are likely governed by California law.

"Generally, under South Carolina choice of law principles, if the parties to a contract

specify the law under which the contract shall be governed, the court will honor this

choice of law."  Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007) (citing

Bazzle v. Green Tree Fin. Corp., 569 S.E.2d 349, 358 (S.C. 2002), vacated on other

grounds, 539 U.S. 444 (2003)).  In the absence of a choice of law provision, South

Carolina courts apply the substantive law of the place where the contract at issue was

formed if the parties challenge a contract's formation, interpretation, or validity.  See,

e.g., O'Briant v. Daniel Constr. Co., 305 S.E.2d 241, 243 (S.C. 1983); Witt v. Am.

Trucking Ass'ns, 860 F. Supp. 295, 300 (D.S.C. 1994).   However, where performance is

at issue, the law of the place of performance governs.  Livingston v. Atl. Coast Line R.R.

Co., 180 S.E. 343, 345 (S.C. 1935).

Velarde's breach of contract, breach of contract accompanied by a fraudulent act,

and promissory estoppel claims are premised on certain representations in Covercraft's

Employee Handbook.  See Compl. ¶¶ 66–79.  While the court does not have the entire

handbook available to review, plaintiffs attached an excerpt of the handbook which does

not specify a choice of law provision.  See ECF No. 1-7.  Thus, since Velarde resided and

worked at Covercraft in California, it is likely that California law applies to those claims

because the alleged contract was formed, performed, and allegedly breached in

California.  See Livingston, 180 S.E. at 345.  In sum, the interest of justice weighs in

favor of transfer to California, though the consideration is given little weight.  See

ServiceMaster of Fairfax, Inc., 2017 WL 3023342, at *6.

Upon review of the four primary factors, the court finds that they weigh in favor

of transfer to California.  Consequently, the court transfers the case to the Eastern District

of California.

<h3 style="text-align:center">IV.   CONCLUSION</h3>

For the foregoing reasons, the court **DENIES** the motion for default judgment and

**TRANSFERS** the case to the Eastern District of California for further proceedings.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 11, 2024**
**Charleston, South Carolina**